IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STRAIGHT ARROW PRODUCTS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE MANE CHOICE HAIR SOLUTION LLC | : | NO. 20-4722 |

O P I N I O N

SCOTT W. REID                                                        DATE:   October 6, 2021
UNITED STATES DISTRICT COURT

In this action, plaintiff, Straight Arrow Products, Inc. ("Straight Arrow"), alleges claims against, defendant, The Mane Choice Hair Solution LLC ("The Mane Choice"), sounding in trademark infringement and unfair competition. The parties are currently engaged in discovery. Presently before the undersigned is Straight Arrow's Motion to Compel Discovery Responses. As explained below, I will grant the motion in part and deny it in part.

**I.      Factual and Procedural Background**

At issue is Straight Arrow's Interrogatory No. 3, and whether it should be read as a single interrogatory, or multiple interrogatories. On February 18, 2021, Straight Arrow served The Mane Choice with its first set of interrogatories, numbered 1-20. *First Set of Interrogatories*, attached to Motion to Compel as Exhibit A. The first three interrogatories read as follows:

**Interrogatory No. 1:**

Identify and fully describe each of the goods and/or services on or in connection with which Defendant currently uses, intends to use, or has used the MANE CHOICE mark.

**Interrogatory No. 2:**

Identify and fully describe whether Defendant uses, intends to use or has used any other MANE formative mark, and if so, identify and fully describe each of the goods and/or services on or in connection with which Defendant currently uses, intends to use or has used such mark.

**Interrogatory No. 3:**

For each of the goods and/or services identified in response to Interrogatory Nos. 1 and 2:

a. Identify the first use date(s) of THE MANE CHOICE mark and any formative mark in connection with such goods and/or services;

b. Identify the retail price of each good and/or service, all sales channels used to sell such goods and/or services, including the percentage of total sales of goods and/or services through each such channel, and the state or geographic region where each such good and/or service has been and/or is expected to be sold and/or advertised;

c. Identify all means used to market, advertise, and/or promote such goods and/or services from their first offering for sale through present, including, without limitation, the names of digital media, newspapers, magazines, trade journals, or periodicals in which Defendant has advertised and/or intends to advertise its goods and/or services under THE MANE CHOICE and any MANE formative mark, the terms MIRACLE, MAGIC or TAIL, all digital keywords and hashtags used in connection with such efforts, and the dollar amount spent on all such efforts;

d. Set forth the dollar amount of the annual sales (projected and/or actual) of each such good and/or service since it was first offered for sale; and

e. Identify all documents supporting the responses to subparagraphs (a) through (d) above.

*Plaintiff's Memorandum in Support of Motion at 3-4.*

In response to Interrogatories 1 and 2, The Mane Choice identified 128 products. However, according to The Mane Choice, Interrogatory No. 3 is not a single interrogatory, because it contains 20 discrete subparts, each of which must be counted as a separate interrogatory under Fed. R. Civ. P. 33(a)(1). Further, because each subpart pertains to the 128 products identified by The Mane Choice in its responses to Interrogatories 1 and 2, The Mane Choice maintains that each subpart is properly multiplied by 128 to arrive at the true number of

interrogatories contained in Interrogatory No. 3.  *Defendant's Responses to Plaintiff's First Set of Interrogatories*, attached to Straight Arrow's Motion as Exhibit D, at 9.  Under this theory, Interrogatory No. 3 is not one, but 2,560 interrogatories (20 multiplied by 128).  *Id*.  Clearly, this is well in excess of the 25-interrogatory limit in Rule 33.

In accordance with its position, The Mane Choice answered Straight Arrow's first two interrogatories, and then answered only the portion of Interrogatory No. 3 which, by The Mane Choice's count, brought the total number to 25 interrogatories.  *Id*.  It did not answer the remainder of Interrogatory No. 3, or any of the other interrogatories in Straight Arrow's first set of interrogatories.  *Id*.

On June 12, 2021, Straight Arrow served a second set of interrogatories on The Mane Choice.  *Second Set of Interrogatories*, attached to Motion as Exhibit H.  Taking the position that its responses to Interrogatory Nos. 1, 2 and a portion of 3 in the first set of interrogatories exhausted all the interrogatories Defendant was required to answer, The Mane Choice did not answer Straight Arrow's second set of interrogatories.

Straight Arrow maintains that Interrogatory No. 3 is a single interrogatory.  It has now filed a Motion to Compel, seeking an order directing The Mane Choice to answer all of Interrogatory No. 3, and the remainder of the interrogatories propounded in its first and second sets of interrogatories.  In opposition to Straight Arrow's motion, The Mane Choice reiterates that Interrogatory No. 3 is actually 2,560 separate interrogatories, and contends that requiring it to answer Interrogatory No. 3 (and each of the remaining interrogatories) would violate equitable notions of fairness, burden, and proportionality.  It also asserts that these 2,560 interrogatories are "clearly intended to harass", which provides an additional basis for its failure to respond to Straight Arrow's interrogatories.  *Opposition to Motion to Compel* at 3.

**II.     Relevant Legal Principles**

    *A.     Discrete Subparts: the 'Related Question' Approach.*

My analysis of this dispute begins with Federal Rule of Civil Procedure 33(a)(1), which reads in relevant part: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Yet, "even though an interrogatory has multiple subparts, it does not necessarily follow that they are all discrete." *Engage Healthcare Communications, LLC v. Intellisphere, LLC*, Civ. A. No. 12-787, 2017 WL 2371834 at *3. (D.N.J. Feb. 10. 2017), S*pecial Master report adopted at* 2017 WL 2367058 (D.N.J. May 21, 2017).

    An advisory note to Rule 33 states that discrete subparts are those "that seek information about discretely separate subjects." *Note of the Advisory Committee on the 1993 Amendment to Rule 33(a)*. This note has, however, been called a "rather cryptic and largely unhelpful summary." *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Company*, 315 F.R.D. 191, 194 (E.D. Texas 2016). Thus, "much ink has been spilled addressing the question of how interrogatory sections and subparts should be counted." *Fouad v. Milton Hershey School and Trust*, Civ. A. No. 19-253, 2020 WL 3265245 at *4 (M.D. Pa. June 17, 2020). Complicating matters further, there is no binding Third Circuit law on this issue. *Engage Healthcare*, *supra*, at *3.

The Special Master in *Engage Healthcare*, a trademark violation case decided in the District of New Jersey, concluded that "the 'related question' approach is the most appropriate analytical framework for determining whether an interrogatory's subpart is a 'discrete subpart' and thus, an altogether separate interrogatory." *Engage Healthcare supra*, *citing Uropep* at 315 F.R.D. at 196, ("Most courts have followed what is sometimes referred to as the 'related question approach'"); *Phoenix Processing Equip. Co. v. Capital Equipment and Trading Corp.*, Civ. A.

4

No. 16-00024, 2019 WL 1261352 at *4 (W.D. Ky. Mar. 19, 2019); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *Safeco of Am. v. Rawston*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); and *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 321-2 (D. Nev. 1991).

Under the "related question" approach, subparts that are logically or factually subsumed within, and necessarily related to, the primary question are not treated as separate interrogatories. *Uropep*, *supra*, at 196 (citing numerous cases). Conversely, where the first question can be answered fully and completely without answering the second question, the questions are distinct. *Uropep*, *supra*; *Paananen v. Cellco Partnership*, No. CO8-1042, 2009 WL 3327227 at *2 (W.D. Wash. Oct. 8, 2009).[1]

Courts that use the "related question" approach often couple it with a pragmatic element, which "calls for the court to apply the governing standard with an eye to the competing purposes of Rule 33(a)(1): allowing reasonable latitude in formulating an inquiry to elicit as complete an answer as possible, while at the same time not allowing the multiplication of interrogatories to the point that it defeats the purposes underlying the 25-interrogatory limit." *Uropep*, *supra*, 196; *Engage Healthcare* at 2017 WL 2371834 at *4; *Paananen*, *supra*, at 2009 3327227 at *2.

In *Uropep* the court explained:

> That [combined] approach … recognizes the reality that "discreteness" is a matter of degree and that deciding whether a subpart of an interrogatory is sufficiently "discrete" to be regarded as a separate interrogatory will frequently depend on the particular circumstances of each case and may not always be answerable with complete confidence.

315 F.R.D. at 197. Simply stated, the context of the case matters, and should be considered when conducting an analysis under the "related question" approach.

---

[1] In *Fouad*, the District Court for the Middle District of Pennsylvania did not use the term "related question approach," but apparently employed it, asking whether "one question is subsumed and related to another or whether each question can stand alone and be answered irrespective of the answer to the others." 2020 WL 3265245 at *4.

5

The *Engage Healthcare* Special Master agreed with *Uropep* that pragmatic considerations consistent with the purpose of the discovery rules, and with consideration of the "particular circumstances of each case," should be employed when using the "related question" approach.  2017 WL 2371834 at *4.  He did not explicitly consider "equitable factors," as The Mane Choice has suggested.  However, in the context of his pragmatic consideration of the particular circumstances of the case before him, the Special Master several times cited "fairness."  *Id*. at **7, 12.

  B.  ***Multiple Products in Patent/Trademark Discovery.***

The parties have pointed to opposing authority on the issue of whether an interrogatory seeking information as to multiple items in trademark litigation must be considered multiple interrogatories.  Straight Arrow relies on *Engage Healthcare*, where the plaintiff in a trademark violation case made arguments similar to those raised here by The Mane Choice, with respect to three "contention" interrogatories, each of which asked for facts, documents, and persons with knowledge regarding multiple implicated marks.  There, the plaintiff argued that such an interrogatory set forth three discrete subparts: one for facts, one for documents, and one for persons.  *Id*. at *4.  Further, according to the plaintiff, it was necessary to multiply all three subparts by the number of marks implicated to arrive at the correct number of interrogatories.  *Id*. at 4-5.

The *Engage Healthcare* Special Master disagreed with the plaintiff.  He determined that "a request seeking facts, persons with knowledge, and documents does not convert each interrogatory into 3 separate ones."  *Id*. at *7.  He noted that to conclude otherwise "would unduly hamstring the parties in this case from eliciting discoverable information about the 31 trademarks that are in dispute."  *Id*.

6

As to the number of marks, the Special Master wrote: "Multiple courts have determined that an interrogatory regarding a particular category constitutes 1 interrogatory, even though the category may contain multiple items." *Id*. at *5, *citing and discussing Uropep*; *Keranos LLC v. Silicon Storage Techs., Inc.*, 797 F.3d 1025 (Fed. Cir. 2015); and *Ginn v. Gemini, Inc.*, 137 F.R.D. 320 (D. Nev. June 5, 1991). On this point, he concluded:

> [J]ust as the courts in *Erfindergemeinschaft* [*Uropep*], *Keranos* and *Ginn* rejected the argument that an interrogatory seeking information about a category of items automatically converts the interrogatory into a multiple [of] interrogatories equal to the number of items in the category, the Special Master rejects Plaintiffs' argument that reference to eleven marks within the umbrella "arbitrary" category converts the first enumerated interrogatory into eleven separate interrogatories and likewise rejects Plaintiffs' same argument with respect to the second and third enumerated interrogatories.

2017 WL 2371834 at *5.

The Special Master added that, even if the challenged interrogatories could be said to exceed the Rule 33 limit, the circumstances would compel him to exercise his discretion in permitting the defendants to serve more than 25 interrogatories: "To rule otherwise would preclude either party from issuing even 1 interrogatory for each disputed mark – an illogical result that would not be consonant with the purpose of Rule 33 or the pragmatic component of the related question approach." *Id*. at *6. Further, the Special Master noted that "[p]ermitting Defendants to propound interrogatories addressing the 31 marks directly at issue is most certainly proportional to the specific needs of this case." *Id*. at *6, n. 6.

The Mane Choice, on the other hand, directs the Court to *Rambus, Inc. v. NVIDIA Corp.*, Case No. C-08-03343, 2011 WL 11746749 (N.D. Cal. Aug 24, 2011), a patent infringement case where the Northern District of California reached an opposite conclusion. At issue in *Rambus, Inc.,* was a motion to compel responses to plaintiff's interrogatories. In opposition to plaintiff's motion, the defendant claimed, among other things, that plaintiff's interrogatories exceeded the

7

40 interrogatory limit (including all discreet subparts) agreed to by the parties. *Rambus, Inc.*, 2011 WL 11746749 at *1.  As part of the court's analysis, it considered the purpose of numerical limits on discovery and noted that the aim of numerical limits on interrogatories is "not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." *Id.* at *14 (citing *Safeco of America v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998)).  The court determined that plaintiff's interrogatories "ask[ed] about multiple distinct subjects (i.e. distinct subparts) regarding [multiple] products." *Id.* at *14.  Ultimately, the court denied plaintiff's motion and held that plaintiff's interrogatories improperly circumvented the limit of 40 interrogatories: "An interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions." *Id.* at *14.

**III.  Discussion**

   ***A.  Straight Arrow's Interrogatory No. 3 Contains Nine Discrete Subparts.***

   This Court agrees with *Uropep* and *Engage Healthcare* that the most efficient approach to determining whether an interrogatory does or does not contain discrete subparts is to apply the "related question" approach, while also incorporating a pragmatic element to ensure that the result is consistent with the purpose of Rule 33(a), and with the federal discovery rules as a whole. *Uropep*, supra, 315 F.R.D. at 197; *Engage Healthcare*, supra, 2017 WL 2371834 at *4.  The particular circumstances of the case should be considered, with an eye toward fairness.

   Applying this standard, it is clear that Straight Arrow's Interrogatory No. 3 is not a single interrogatory.  Rather, it contains discrete subparts.  There is no primary question with subsidiary questions which could be subsumed within Interrogatory No. 3.  *See Uropep* at 315 F.R.D. 196.  Instead, Interrogatory No. 3 initially refers to the products The Mane Choice itself has identified

8

in Interrogatory Nos. 1 and 2, and then asks a variety of questions about those products. Thus, not only can each of the first four subparts to Interrogatory No. 3 be answered without reference to the other subparts, but many of the clauses in each subpart can be answered without reference to other clauses in the same sentence. *Id.*, *and see Paananen*, *supra*, at *2.

In this respect, the Court's view of Interrogatory No. 3 is similar to that of The Mane Choice. However, where The Mane Choice chose to view the original subsection (e), which seeks supporting documents, as four separate interrogatories, I find it reasonable to incorporate a request for documents as part of each separate discrete subpart/interrogatory. This is because the identification of documents already used by The Mane Choice to answer an interrogatory should not require any additional research; obviously, The Mane Choice will already have identified those documents in preparing its response.

Specifically, Interrogatory No. 3 will be reformatted as follows:

For each of the goods and/or services identified in response to Interrogatory No. 1 and 2:

3. Identify the first use date(s) of THE MANE CHOICE mark and any formative mark in connection with such goods and/or services. Identify all documents supporting your response.

4. Identify the retail price of each good and/or service. Identify all documents supporting your response.

5. Identify all sales channels used to sell such goods and/or services. Identify all documents supporting your response.

6. Identify the percentage of total sales of goods and/or services through each such channel. Identify all documents supporting your response.

7. Identify the state or geographic region where each such good and/or service has been and/or is expected to be sold and/or advertised. Identify all documents supporting your response.

8. Identify all means used to market, advertise, and/or promote such goods and/or services from their first offering for sale through present, including, without limitation, the names of digital media, newspapers, magazines, trade journals, or periodicals in

which Defendant has advertised and/or intends to advertise its goods and/or services under THE MANE CHOICE and any MANE formative mark, the terms MIRACLE, MAGIC, or TAIL.  Identify all documents supporting your response.

9.  Identify all digital keywords and hashtags used in connection with the efforts described in Interrogatory No. 8.  Identify all documents supporting your response.

10.  Set forth the dollar amount spent on all efforts identified in Interrogatory No. 8. Identify all documents supporting your response.

11.  Set forth the dollar amount of the annual sales (projected and/or actual) of such good and/or service since it was first offered for sale.  Identify all documents supporting your response.

Following this approach, Straight Arrow's 24 interrogatories now become 32 interrogatories.  In accordance with Rule 33(a)'s 25-interrogatory limit, The Mane Choice need not respond to Straight Arrow's final seven interrogatories.

### B. Interrogatories Seeking Information as to Multiple Products Will Be Counted as One Interrogatory.

I conclude that an interrogatory seeking information about multiple products does not need to be counted as the same number of interrogatories as the number of products.  The interpretation of Rule 33(a) set forth by The Mane Choice would unreasonably hamper discovery in this trademark case.  As noted in *Engage Healthcare*, the interpretation favored by The Mane Choice would preclude Straight Arrow from issuing even one interrogatory pertaining to each of the allegedly violating products, "an illogical result that would not be consonant with the purpose of Rule 33 or the pragmatic component of the related question approach."  2017 WL 2371834 at *6.

### C.      Considerations of Fairness:  Proportionality and Undue Burden

The purpose of discovery is the exchange of information.  *See In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 228, 231-2 (E.D. Pa. 2014).  At the same time, the first rule of civil procedure is nuanced, providing that the Rules of Civil Procedure should not only secure a just determination of every action and proceeding, but also a speedy and inexpensive one.  Fed. R. Civ. P. 1.  In line with these principles, Fed. R. Civ. P. 26(b)(1) provides for a broad scope of discovery, ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), but only where it is proportional to the needs of the case, considering factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Having considered the benefit/burden of proportionality in this case, I conclude that it is appropriate to require The Mane Choice to provide to Straight Arrow the information originally requested in its Interrogatory 3.

#### 1.      *The Beneficial Purpose of the Interrogatories*

Although The Mane Choice argues that Straight Arrow's interrogatories were intended to harass, there is no basis for such a conclusion.  The information sought is of the kind commonly requested in trademark violation discovery.  *See* Practical Law Intellectual Property & Technology, *Trademark Litigation:  Interrogatories (Plaintiff to Defendant)*.  The information originally requested in Interrogatory No. 3 would inform Straight Arrow about the nature and scope of the trademark violation it alleges.

The Mane Choice suggests that, instead of asking for the date of first use for each of the 128 identified products, Straight Arrow "could have requested the date of first use of THE MANE CHOICE in connection with goods or services."  *Opposition* at 5.  This, however, would not generate an accurate picture of the magnitude of the alleged trademark violation, if a

11

violation is ultimately found to have occurred. It appears, therefore, that the purpose of Interrogatory 3 was not to harass The Mane Choice, but to further the exchange of information.

The Mane Choice also argues that the information sought is pointless "given plaintiff's use of its mark decades prior to The Mane Choice's formation." *Response* at 3. This, however, is a subject appropriately raised and fully briefed in a motion relating to the merits of the case. In the absence of any finding of fact by the trial judge on this subject, it cannot be considered here with respect to the scope of discovery.

### 2. *The Burden on the Mane Choice*

Clearly, any discovery request is a burden on the responder to some extent. The question is whether the burden on The Mane Choice is proportionate to the likely benefit of the discovery to the case as a whole. In this regard, it is relevant that the magnitude of Interrogatory No. 3 was determined by the number of products identified by The Mane Choice. This created a proportionality between the scope of the case and the scope of Straight Arrow's discovery. In *Engage Healthcare*, the Special Master wrote: "Permitting Defendants to propound interrogatories addressing the 31 marks directly at issue is most certainly proportional to the specific needs of this case." *Id*. at *6, n. 6. Similarly, because 128 products are involved here, discovery regarding 128 products is proportionate to the specific needs of this case.

The Mane Choice maintains that the information sought in Straight Arrow's original Interrogatory No. 3 is somewhere in the documents it produced to Straight Arrow. It argues that Straight Arrow is just as able to find the requested information in the documents as it is, itself. However, The Mane Choice must have familiarized itself to some extent with the contents of its own document production. It is in a better position to analyze, or at least identify, responsive documents. I conclude that the burden to The Mane Choice is not disproportionate.

### *IV.   Conclusion*

In accordance with the above discussion, the Court will enter an Order granting Straight Arrow's Motion to Compel Discovery in part, and denying it in part; reformatting Straight Arrow's "Interrogatory No. 3" as described in this Opinion; and directing The Mane Choice to answer Straight Arrow's Interrogatories 3-25, as they have now been reformatted, on or before December 6, 2021.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE